**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

—————————————————————————— x

IN RE THE BEAR STEARNS COMPANIES,    :
INC. SECURITIES, DERIVATIVE, AND ERISA    :   Master File No.:
LITIGATION    :   <u>08 M.D.L. No. 1963 (RWS)</u>

    :

This Document Relates To:    :

    :

Securities Action, 08-Civ-2793 (RWS)    :

    :

    :

—————————————————————————— x

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S**
**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PARTIAL**
**SETTLEMENT, APPROVAL OF NOTICE TO THE SETTLEMENT CLASS AND**
<u>**CERTIFICATION OF THE SETTLEMENT CLASS FOR SETTLEMENT PURPOSES**</u>

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

I.      PRELIMINARY STATEMENT ................................................................................ 1

II.     DESCRIPTION OF THE LITIGATION ................................................................... 2

III.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL........... 5

        A.     The Proposed Settlement Is the Result of Well Grounded, Good Faith,
               Arm's-Length Negotiations ...................................................................... 6

        B.     The Proposed Settlement Falls Within the Range of Reasonableness and
               Merits Issuance of Notice and a Hearing on Final Approval................................ 7

IV.     THE COURT SHOULD APPROVE THE FORM OF THE NOTICE AND PLAN
        FOR PROVIDING NOTICE TO THE SETTLEMENT CLASS...................................... 8

V.      THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR
        SETTLEMENT PURPOSES UNDER RULES 23(a) AND (b)(3) ................................. 10

        A.     The Settlement Class Members Are Too Numerous to Be Joined ...................... 11

        B.     Common Questions of Law and Fact Exist ............................................. 12

        C.     Lead Plaintiff's Claims Are Typical of Those of the Settlement Class................ 13

        D.     Lead Plaintiff and Co-Lead Counsel Will Fairly and Adequately Protect
               the Interests of the Settlement Class ..................................................... 14

        E.     The Requirements of Rule 23(b)(3) Are Satisfied in this Action ......................... 16

               1.     Common Questions of Law and Fact Predominate. ................................. 16

               2.     A Class Action Is Superior to Other Available Methods for the Fair
                      and Efficient Adjudication of this Controversy ........................................ 17

VI.     PROPOSED SCHEDULE OF EVENTS..................................................................... 18

VII.    CONCLUSION........................................................................................................ 18

## TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*Aramburu v. Healthcare Fin. Servs.,*
No. 02 CV 6535 (ARR), 2005 WL 990995 (E.D.N.Y. Apr. 14, 2005) ..................................10

*In re "Agent Orange" Prod. Liab. Litig.,*
818 F.2d 145 (2d Cir. 1987)........................................................................12

*In re Arakis Energy Corp. Sec. Litig.,*
No. 95 Civ. 3431 (ARR), 1999 WL 1021819 (E.D.N.Y. Apr. 27, 1999)...............................16

*In re Bear Stearns Cos. Inc. Sec. Derivative, & ERISA Litig.,*
763 F. Supp. 2d 423 (S.D.N.Y. 2011).................................................................12

*Cross v. 21st Century Holding Co.,*
No. 00 Civ. 4333 (MBM), 2004 WL 307306 (S.D.N.Y. Feb. 18, 2004)................................11

*In re Currency Conversion Fee Antitrust Litig.,*
MDL Nos. 1409, M 21-95, 2006 WL 3247396 (S.D.N.Y. Nov. 8, 2006)................................5

*In re Drexel Burnham Lambert Grp.,*
960 F.2d 285 (2d Cir. 1992)........................................................................14

*Dura-Bilt Corp. v. Chase Manhattan Corp.,*
89 F.R.D. 87 (S.D.N.Y. 1981) .....................................................................12

*In re Global Crossing Sec. & ERISA Litig.,*
225 F.R.D. 436 (S.D.N.Y. 2004) ...................................................................8

*In re Independent Energy Holdings PLC,*
No. 00 Civ. 6689 (SAS), 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ..............................6

*In re Initial Pub. Offering Sec. Litig.,*
243 F.R.D. 79 (S.D.N.Y. 2007) ....................................................................5

*In re Interpublic Sec. Litig.,*
No. 02 Civ. 6527 (DLC), 2003 WL 22509414 (S.D.N.Y. Nov. 6, 2003)...............................14

*In re Interpublic Sec. Litig.,*
Nos. 02-6527, 03-1194, 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004)...................................5

*Leung v. Home Boy Rest. Inc.,*
No. 07 Civ. 8779 (RJS) (DFE), 2009 WL 398861 (S.D.N.Y. Feb.18, 2009)...........................6

*Moore v. PaineWebber, Inc.*,
　　306 F.3d 1247 (2d Cir. 2002).............................................................................16

*In re NASDAQ Market-Makers Antitrust Litig.*,
　　176 F.R.D. 99 (S.D.N.Y. 1997) .......................................................................5, 8

*In re NYSE Specialists Sec. Litig.*,
　　260 F.R.D. 55 (S.D.N.Y. 2009) .........................................................................12

*In re Oxford Health Plans, Inc. Sec. Litig.*,
　　191 F.R.D. 369 (S.D.N.Y. 2000) .......................................................................13

*In re PaineWebber Ltd. P'ships Litig.*,
　　147 F.3d 132 (2d Cir. 1998).................................................................................5

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
　　163 F.R.D. 200 (S.D.N.Y. 1995) ...............................................................5, 8, 10

*Robidoux v. Celani*,
　　987 F.2d 931 (2d Cir. 1993)........................................................................11,14

*In re Sadia, S.A. Sec. Litig.*,
　　269 F.R.D. 298 (S.D.N.Y. 2010) .......................................................................13

*In re Salomon Analyst Metromedia Litig.*,
　　544 F.3d 474 (2d Cir. 2008)..............................................................................17

*In re SCOR Holding (Switzerland) AG Litig.*,
　　537 F. Supp. 2d 556 (S.D.N.Y. 2008).......................................................11, 13, 16

*Toure v. Central Parking Sys. of New York*,
　　No. 05 Civ. 5237 (WHP), 2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007) ............14

*In re Veeco Instruments, Inc. Sec. Litig.*,
　　235 F.R.D. 220 (S.D.N.Y. 2006) ...................................................................14, 17

*In re Vivendi Universal, S.A., Sec. Litig.*,
　　242 F.R.D. 76 (S.D.N.Y. 2007) .............................................................11, 12, 13, 14

*Wal-Mart Stores, Inc. v. Dukes*,
　　131 S.Ct. 2541 (U.S. 2011)...............................................................................12

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
　　396 F.3d 96 (2d Cir. 2005)...............................................................................5, 6

*In re WorldCom, Inc. Sec. Litig.*,
　　219 F.R.D. 267 (S.D.N.Y. 2003) ...............................................................14, 15, 18

## STATUTES

15 U.S.C. §§ 78u-4 ...................................................................................................1,7

15 U.S.C. § 78u-4(a)(4) ................................................................................................8

15 U.S.C. § 78u-4(a)(7) ................................................................................................9

Fed. R. Civ. P. 23(a) ...................................................................................................15

Fed. R. Civ. P. 23(a)(1) .........................................................................................11,12

Fed. R. Civ. P. 23(a)(2) ...............................................................................................13

Fed. R. Civ. P. 23(a)(3) ...............................................................................................13

Fed. R. Civ. P. 23(a)(4) ...............................................................................................14

Fed. R. Civ. P. 23(b) ...................................................................................................16

Fed. R. Civ. P. 23(b)(3) ......................................................................................10,16,17

Fed. R. Civ. P. 23(c)(2)(B) ..........................................................................................8,9

Fed. R. Civ. P. 23(c)(3) .................................................................................................9

Fed. R. Civ. P. 23(e) ......................................................................................................4

Fed. R. Civ. P. 23(e)(1) .............................................................................................8,10

Fed. R. Civ. P. 23(g)(1)(A) .......................................................................................10,16

Fed. R. Civ. P. 23(g)(1)(B) ...........................................................................................15

## OTHER AUTHORITIES

Cornerstone Research, Securities Class Action Settlements: 2011 Review and Analysis ............7

## I.     **PRELIMINARY STATEMENT**

Lead Plaintiff, The State of Michigan Retirement Systems ("Lead Plaintiff" or "SMRS") respectfully submits this memorandum in support of its unopposed motion seeking preliminary approval, class certification and other relief (the "Motion") in connection with a settlement reached with Defendants The Bear Stearns Companies Inc. ("Bear Stearns" or "the Company"),[1] James E. Cayne; Alan D. Schwartz; Warren J. Spector; Alan C. Greenberg; Samuel L. Molinaro, Jr.; Michael Alix and Jeffrey M. Farber (together with Bear Stearns, the "Settling Defendants" or "Bear Stearns Defendants").[2]

After extensive investigation and discovery, including the review of over 9 million pages of documents and interviews of numerous witnesses, as well as two arm's-length in-person mediation sessions facilitated by the Hon. Layn R. Phillips (Ret.), an experienced and highly respected mediator and former United States District Judge, Lead Plaintiff and the Bear Stearns Defendants have agreed to settle all claims against the Bear Stearns Defendants in this Action in exchange for a payment of $275,000,000.  The terms of the Settlement are as set forth in the Stipulation of Settlement and its accompanying exhibits.

Lead Plaintiff's Motion seeks an order granting:

- Preliminary approval of the settlement of claims against the Bear Stearns Defendants in this class action, as set forth in the Stipulation of Settlement;

- Approval of the form, substance, and the requirements of the proposed notice of settlement and summary notice, appended as Exhibits 1 and 3 to the proposed preliminary approval order, and the means and methods for disseminating notice, as comporting with due process and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. §§ 78u-4 *et seq.*

---

[1]     All capitalized terms not otherwise defined herein have the same meaning as that set forth in the Stipulation and Agreement of Settlement with the Bear Stearns Defendants, dated as of June 5, 2012, ("Stipulation of Settlement") submitted contemporaneously herewith as Exhibit 1 to the Declaration of James W. Johnson ("Johnson Decl.").

[2]     Defendant Deloitte & Touche LLP is not a party to this Settlement.

- Preliminary certification of a settlement class (the "Settlement Class") consisting of all Persons who, during the period from December 14, 2006 to and through March 14, 2008, inclusive (the "Class Period"), purchased or otherwise acquired the publicly traded common stock or other equity securities, or call options of or guaranteed by Bear Stearns, or sold Bear Stearns put options, either in the open market or pursuant or traceable to a registration statement, and were damaged thereby. The Settlement Class includes all persons who received Bear Stearns Capital Accumulation Plan ("CAP") Units and Restricted Stock Units ("RSU") that had fully vested, entitling them to an equivalent number of shares of Bear Stearns common stock upon settlement at the end of a deferral period during the Class Period, as part of their compensation as an employee with Bear Stearns and participation in its CAP or RSU Plan.

- Appointment of SMRS as Class Representative and Co-Lead Counsel as Class Counsel; and

- Scheduling a hearing at which final approval of the Settlement, plan of allocation and an award of attorneys' fees and expenses to Co-Lead Counsel may be considered.

Lead Plaintiff has agreed to settle this class action with the Bear Stearns Defendants for $275 million in cash.  This substantial proposed settlement represents an excellent result for the Settlement Class, particularly given the numerous and substantial risks the Lead Plaintiff faced in this litigation.  Although Lead Plaintiff believes the claims it has asserted are meritorious, and Bear Stearns Defendants believe their defenses are meritorious, the parties both recognize the uncertainty and the risk attendant to any litigation – especially a complex class action such as this – and the difficulties, substantial expense and length of time necessary to prosecute the litigation through class certification, expert discovery, summary judgment motions, trial, post-trial motions and appeals.  Based upon their respective consideration of these and other relevant factors, the Settling Parties have settled the Action on the terms and conditions set forth in the Stipulation of Settlement.

## II.    <u>DESCRIPTION OF THE LITIGATION</u>

This Action was commenced on March 17, 2008 by the filing of an initial complaint alleging that certain of the Bear Stearns Defendants violated the federal securities laws.

Thereafter, several additional securities class action complaints were filed and subsequently consolidated into this Action by order dated January 6, 2009.  On January 6, 2009, the Court appointed Lead Plaintiff and approved its selection of Co-Lead Counsel to represent the putative class.

Following a detailed investigation that included, among other things, the interviews of numerous former Bear Stearns employees, review of Bear Stearns's public statements and consultation with experts, Lead Plaintiff filed the operative Consolidated Class Action Complaint for Violations of the Federal Securities Laws on February 27, 2009 (the "Complaint").  The Complaint generally alleges, among other things, that the Bear Stearns Defendants violated Sections 10(b), 20(a), and 20A of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder by making alleged misstatements and omissions during the Class Period in connection with Bear Stearns's business and financial well-being, including significant losses in the value of its allegedly extraordinarily leveraged and highly risky mortgage-backed assets and the Company's risk profile and liquidity.  The Complaint further alleges that Lead Plaintiff and other Settlement Class Members purchased or acquired Bear Stearns securities during the Class Period at artificially inflated prices and were damaged thereby.

On April 24, 2009, the Defendants filed motions to dismiss, which Lead Plaintiff opposed.  On January 19, 2011, the Court denied Defendants' motions to dismiss in their entirety.  On March 7, 2011, the Defendants filed their Answers, denying the substantive allegations in the Complaint.

Discovery commenced, including the production of documents by Defendants and third-parties, which resulted in the production of over nine million pages of documents, approximately

3

six million of which were produced by Bear Stearns.  On October 6, 2011, Lead Plaintiff moved to certify a litigation class in the Action.  That motion was pending at the time of settlement.

In November 2009, while the Defendants' motion to dismiss was pending, Lead Plaintiff and Bear Stearns engaged in a mediation with the assistance of an experienced mediator, Judge Phillips.  This initial negotiation did not result in a resolution of the Action.  Later, after the Court's denial of the Defendants' motions to dismiss and after the parties had engaged in extensive discovery, Lead Plaintiff and Bear Stearns renewed their discussions, again with the assistance of Judge Phillips.  Following lengthy, arm's-length, and mediated negotiations, the Settling Parties reached an agreement in principle to settle the claims against the Bear Stearns Defendants.

Before agreeing to the Settlement, Lead Plaintiff and Co-Lead Counsel had conducted an extensive investigation into the events and transactions underlying the claims alleged in the Complaint.  Co-Lead Counsel analyzed the evidence adduced during its investigation and through discovery, which included reviewing and analyzing publicly available information and data concerning Bear Stearns, as well as information concerning investigations conducted by the Financial Crisis Inquiry Commission and the U.S. Securities and Exchange Commission's Office of Inspector General, interviewing ninety-five (95) former Bear Stearns employees and other persons with relevant knowledge, and consulting with experts on accounting, valuation, damages and causation issues.  Co-Lead Counsel also researched the applicable law with respect to the claims of the Lead Plaintiff and the claims against the Settling Defendants and their potential defenses.  Thus, at the time the agreement to settle was reached, Lead Plaintiff and Co-Lead Counsel had a thorough understanding of the strengths and weaknesses of Lead Plaintiff's and the Settling Defendants' positions.

III.     **THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL**

Rule 23(e) requires judicial approval for any compromise of claims brought on a class basis.  Approval of a proposed settlement is within the Court's discretion, to be exercised in accordance with public policy that strongly favors pretrial settlement of class action lawsuits.  *In re Interpublic Sec. Litig.*, Nos. 02-6527, 03-1194, 2004 WL 2397190, at *7 (S.D.N.Y. Oct. 26, 2004); *see also In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998).

The Court "must determine whether the terms of the proposed settlement warrant preliminary approval [by] mak[ing] 'a preliminary evaluation' as to whether the settlement is fair, reasonable and adequate."  *In re Currency Conversion Fee Antitrust Litig.*, MDL Nos. 1409, M 21-95, 2006 WL 3247396, at *5 (S.D.N.Y. Nov. 8, 2006) (citation omitted); *see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997).

As this Court has explained:

> In considering preliminary approval, courts make a preliminary evaluation of the fairness of the settlement, prior to notice.  Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted.  Once preliminary approval is bestowed, the second step of the process ensues. . . .

*NASDAQ,* 176 F.R.D. at 102 (citations omitted); *see also, In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007).

In essence, the Court should determine whether the settlement is "at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard." *NASDAQ*, 176 F.R.D. at 102 (citation omitted); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) ("The Court's function now is to ascertain whether there is any

reason to notify the class members of the proposed settlement and to proceed with a fairness hearing.") (internal quotation marks omitted).

A.    **The Proposed Settlement Is the Result of Well**
               **Grounded, Good Faith, Arm's-Length Negotiations**

A presumption of fairness applies to a proposed class settlement that is the result of arm's-length negotiations between counsel knowledgeable in complex class litigation. *Wal-Mart Stores,* 396 F.3d at 116; *see also Leung v. Home Boy Rest. Inc.*, No. 07 Civ. 8779 (RJS) (DFE), 2009 WL 398861, *1 (S.D.N.Y. Feb.18, 2009) (preliminary approval appropriate where "the proposed settlement appears to be the product of extensive, arms-length negotiations conducted by experienced counsel with input from the parties . . .")  The Settlement is the product of just such rigorous arm's-length negotiations.  The Settling Parties negotiated twice in separate lengthy sessions with Judge Phillips, who has assisted in numerous other complex class action mediations.  "[T]hat the Settlement was reached after exhaustive arm's-length negotiations, with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable."  *In re Independent Energy Holdings PLC*, No. 00 Civ. 6689 (SAS), 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003).

Moreover, the Settlement was reached only after completion of: (1) Lead Plaintiff's initial pre-filing factual investigation; (2) Lead Plaintiff's analysis of Bear Stearns's public filings and public statements; (3) Lead Plaintiff's review of news articles and analyst reports about Bear Stearns; (4) interviewing over 90 witnesses; (5) exhaustive briefing on Defendants' motions to dismiss; (6) the review and analysis of millions of pages of documents provided by Defendants and non-parties; (7) consultations with experts on valuation, damages, accounting and class certification issues; (8) researching and drafting a motion for class certification, supported by an expert report; and (9) two rounds of mediation and intensive settlement

negotiations.  Thus, the Settlement was not achieved until the Settling Parties had sufficient familiarity with the issues in the case to evaluate its merits and agree on a settlement figure that was both acceptable to the Bear Stearns Defendants and reasonable, fair and adequate to the Settlement Class.

**B.** **The Proposed Settlement Falls Within the Range of Reasonableness and Merits Issuance of Notice and a Hearing on Final Approval.**

The proposed $275 million Settlement is well within the range of reasonableness.  If approved, the Settlement would be one of the top 40 largest settlements since the passage of the PSLRA, and far above the average and median recoveries of similar securities class action and, particularly credit-crisis cases.[3]  The proposed settlement is an excellent result given the numerous and substantial risks faced in this litigation.  In particular, the Bear Stearns Defendants have raised a number of arguments and defenses (which they would raise at summary judgment and trial) that there were no actionable misstatements and omissions and, more importantly, that Lead Plaintiff would not be able to establish the Bear Stearns Defendants acted with the requisite fraudulent intent.  Even assuming Lead Plaintiff could establish liability, the Bear Stearns Defendants maintained that any potential investment losses suffered by Lead Plaintiff and the Settlement Class were caused by external, independent factors, and not caused by the Defendants' alleged conduct.   In the absence of a Settlement, the Settling Parties would present factual and expert testimony on each of these issues, and there is considerable risk that the Court or jury would resolve the inevitable "battle of the experts" against Lead Plaintiff and the Settlement Class.

---

[3] *See* Cornerstone Research, "Securities Class Action Settlements: 2011 Review and Analysis" (noting that the median credit crisis settlement between 2009 and 2011 was $31.3 million, compared with $8 million for non-credit-crisis related cases.)  http://www.cornerstone.com/files/Publication/a0e54ba8-2830-4c00-9481-108208ec4ed8/Presentation/PublicationAttachment/f03e4174-ec8a-4eb3-ba22-9bd5162f09e/Cornerstone_Research_Settlements _2011_Analysis.pdf, at 16.

As further indicia of its reasonableness, the Settlement exhibits none of the "obvious deficiencies" that could justify denying preliminary approval. *NASDAQ*, 176 F.R.D. at 102. In all respects, the terms embodied in the Stipulation of Settlement are customary in nature. In particular, Lead Plaintiff's recovery from the settlement fund will be determined according to precisely the same formula as the recoveries of other Settlement Class Members, with the exception of any compensatory payment to the Lead Plaintiff approved by the Court, as contemplated by 15 U.S.C. § 78u-4(a)(4). *See NASDAQ*, 176 F.R.D. at 102 (settlement may be approved preliminarily where it "does not improperly grant preferential treatment to class representatives or segments of the class"); *Prudential*, 163 F.R.D. at 209 (preliminary approval is appropriate where "preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives . . .").

Additionally, the Settlement was negotiated under the direction and with the direct and substantial involvement of Lead Plaintiff. This further strengthens the presumption of fairness. *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004) (participation of sophisticated institutional investor lead plaintiffs in settlement process supports approval of settlement).

## IV.   THE COURT SHOULD APPROVE THE FORM OF THE NOTICE AND PLAN FOR PROVIDING NOTICE TO THE SETTLEMENT CLASS

Lead Plaintiff also requests that the Court approve the form and content of the proposed Notice and Summary Notice. (*See* Exhibits 1 and 3 to the proposed Preliminary Approval Order). Consistent with Rules 23(c)(2)(B) and 23(e)(1), the proposed "long form" Notice apprises class members of the nature of the action, the definition of the Settlement Class to be certified, the class claims and issues, and the claims that will be released. The Notice also

advises that a Settlement Class Member may enter an appearance through counsel if desired, notes that the Court will exclude from the Settlement Class any Settlement Class Member who requests exclusion (and sets forth the procedures and deadline for doing so), and further describes (i) the binding effect of a judgment on Settlement Class Members under Rule 23(c)(3), (ii) how to object to the proposed Settlement and/or requested attorneys' fees, and (iii) how to make a claim.

The Notice also satisfies the PSLRA's separate disclosure requirements by, *inter alia*: stating the amount of the Settlement on both an aggregate and average per share basis; providing a brief statement explaining the reasons why the Settling Parties are proposing the Settlement; stating the amount of attorney's fees and maximum amount of litigation expenses (both on an aggregate and average per share basis) that Co-Lead Counsel will seek; and providing the names, addresses, and telephone numbers of representatives of the Claims Administrator and Co-Lead Counsel who will be available to answer questions from Settlement Class Members. *See* 15 U.S.C. § 78u-4(a)(7). Both forms of Notice will also disclose the date, time and location of the final Settlement Hearing and the deadlines for submitting Proof of Claim forms and any objections to the Settlement, the Plan of Allocation, or to Co-Lead Counsel's requested attorney's fees and expenses. These disclosures are thorough and should be approved.

Lead Plaintiff also requests that the Court approve the appointment of GCG, Inc. as Claims Administrator. GCG has extensive relevant experience and is a nationally recognized notice and claims administration firm. Its staff consists of experienced CPA's, IT specialists and various other professionals with substantial experience in notice and claims administration. GCG has administered five of the ten largest securities settlements of all time (such as *In re WorldCom Sec. Litig.*, *In re Tyco Int'l, Ltd*, and *In re Nortel Networks Corp. Sec. Litig.* I and II).

Rule 23(c)(2)(B) requires a certified class to receive "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Similarly, Rule 23(e)(1) requires a court to "direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." The proposed Notice plan readily meets these standards and is typical of Notice plans in similar actions.

## V.   THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES UNDER RULES 23(a) AND (b)(3)

In granting preliminary approval of the Settlement, the Court should also preliminarily certify the Settlement Class under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. Certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *Prudential*, 163 F.R.D. at 205. "The law in the Second Circuit favors the liberal construction of Rule 23 … and courts may exercise broad discretion when they determine whether to certify a class." *Aramburu v. Healthcare Fin. Servs.,* No. 02 CV 6535 (ARR), 2005 WL 990995, at *2 (E.D.N.Y. Apr. 14, 2005) (citation omitted).

Lead Plaintiff seeks preliminary certification of a class consisting of all persons and entities that, between December 14, 2006 and March 14, 2008, inclusive, purchased or otherwise acquired the publicly traded common stock or other equity securities, or call options of or guaranteed by the Company, or sold Bear Stearns put options, and were damaged thereby. The Settlement Class also includes all persons who received Bear Stearns CAP Units and Restricted Stock Units that had fully vested, entitling them to an equivalent number of shares of Bear Stearns common stock upon settlement at the end of a deferral period, as part of their

compensation as an employee with the Company and participation in its CAP and Restricted Stock Unit Plan.[4]

### A.    The Settlement Class Members Are Too Numerous to Be Joined

As required for class certification by Rule 23(a)(1), the members of the proposed class are so numerous that joinder of all its members would be "impracticable."  Impracticable does not mean impossible, and "[p]laintiffs are not obligated to prove the exact class size to satisfy numerosity."  *Cross v. 21st Century Holding Co.*, No. 00 Civ. 4333 (MBM), 2004 WL 307306, at *1 (S.D.N.Y. Feb. 18, 2004) (citing *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)). Lead Plaintiff may satisfy the numerosity requirement by "showing that a large number of shares were outstanding and traded during the relevant period."  *See In re Vivendi Universal, S.A., Sec. Litig.*, 242 F.R.D. 76, 84 (S.D.N.Y. 2007) (internal quotations and citation omitted).  Indeed, numerosity has been presumed at a level as low as 40 class members.  *See In re SCOR Holding (Switzerland) AG Litig.*, 537 F. Supp. 2d 556, 570 (S.D.N.Y. 2008) (citing *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)).

The Settlement Class satisfies the numerosity threshold here.  During the Class Period, Bear Stearns had on average 117,435,702 million common shares outstanding.  *See* Declaration of John D. Finnerty, Ph.D., attached to Lead Plaintiff's Motion for Class Certification, ECF 227 ("Finnerty Report"), ¶19.  Bear Stearns's common stock was actively traded on the New York stock Exchange ("NYSE") throughout the Class Period, with more than 1.9 billion shares trading on the NYSE during the Class Period.  *Id.* From this evidence, the Court can conclude that the

---

[4]   Excluded from the Settlement Class are: the Defendants (including Deloitte & Touche LLP); the officers and directors of Bear Stearns; the members of the immediate families of the Individual Defendants; any firm, trust, partnership, corporation, or entity in which any Defendant has a controlling interest; the legal representatives, heirs, successors-in-interest or assigns of any such excluded Person; and any putative Settlement Class Member who properly excludes himself, herself or itself by filing a valid and timely request for exclusion in accordance with the requirements explained in the Notice.

Settlement Class likely includes thousands, if not tens of thousands, of members, and joinder of all these individuals would be impracticable. Therefore, Rule 23(a)(1) is satisfied.

### B.   Common Questions of Law and Fact Exist

As Rule 23(a)(2) requires, the claims of the members of the proposed class involve numerous common questions of law and fact. To establish commonality, class members must have "suffered the same injury," and "[t]heir claims must depend upon a common contention." *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2545 (U.S. 2011) (internal quotation and citation omitted). Class members' "common contention . . . must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Id.* at 2551. The existence of just a single common legal or factual question is sufficient to satisfy Rule 23(a)(2). *Id.* at 2556; *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 166-67 (2d Cir. 1987) (same).[5] In securities fraud litigation, the "commonality requirement 'has been applied permissively.'" *Vivendi*, 242 F.R.D. at 84 (citation omitted).

Here, the Court has determined that Lead Plaintiff adequately alleged that Defendants made fraudulent material misrepresentations and omissions in Bear Stearns's public securities filings and other public statements about a range of issues and with the requisite *scienter*. *In re Bear Stearns Cos. Inc. Sec. Derivative, & ERISA Litig.*, 763 F. Supp. 2d 423, 488, 499 (S.D.N.Y. 2011). These material misrepresentations and omissions allegedly artificially inflated the price of Bear Stearns's common stock, similarly injuring each Settlement Class Member. *Id.*, at 508-509. Thus, questions of fact and law common to all members of the proposed Settlement Class

---

[5] As one court observed, "individual issues will likely arise in this as in all class action cases. But to allow various secondary issues of plaintiffs' claim to preclude certification of a class would render the rule an impotent tool for private enforcement of the securities laws." *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 99 (S.D.N.Y. 1981); *see also In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 75 (S.D.N.Y. 2009) (stating that "predominance does not require a plaintiff to show that there are no individual issues").

include, *inter alia*: whether the Bear Stearns Defendants' alleged acts and omissions violated the federal securities laws; whether Bear Stearns's public filings with the SEC, press releases, conference calls, and other statements disseminated by the Settling Defendants during the Class Period misrepresented or omitted material facts about Bear Stearns; whether the Bear Stearns Defendants acted knowingly, or with severe recklessness, in allegedly misrepresenting or omitting those material facts; whether the market price of Bear Stearns's common stock was artificially inflated during the Class Period due to the alleged false and misleading statements or omissions; whether, with respect to Lead Plaintiff's and the Settlement Class's claims pursuant to Section 20(a) of the Exchange Act, the Settling Defendants named in those claims were controlling persons of Bear Stearns; and whether Lead Plaintiff and other Settlement Class Members suffered damages, as well as the appropriate measure thereof.

Courts in this District have routinely found that the above types of common questions satisfy Rule 23(a)(2).[6]

### C.   Lead Plaintiff's Claims Are Typical of Those of the Settlement Class

As Rule 23(a)(3) requires, "the claims . . . of the representative parties are typical of the claims . . . of the class."   Here, Lead Plaintiff satisfies Rule 23(a)(3)'s typicality requirement because "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *See SCOR*, 537 F. Supp. 2d at 571 (citing *Central States Southeast & Southwest Areas Health & Welfare Fund v. Merck-Medco Managed Care*, 504 F.3d 229, 245 (2d Cir. 2007)).  "Typicality [ ] does not

---

[6]   *See, e.g., SCOR*, 537 F. Supp. 2d at 571 ("whether the [d]efendants' public statements . . . contained material misrepresentations or omissions in violation of Section 10(b), and whether [d]efendants acted with scienter," are common questions that suffice to support a finding of commonality); *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 309 (S.D.N.Y. 2010); *Vivendi*, 242 F.R.D. at 84.  Where, as here, "the facts as alleged show that Defendants' course of conduct concealed material information from an entire putative class, the commonality requirement is met."  *See In re Oxford Health Plans, Inc. Sec. Litig.*, 191 F.R.D. 369, 374 (S.D.N.Y. 2000); *Sadia*, 269 F.R.D. at 309 (finding that plaintiffs demonstrated commonality by alleging "a common course of conduct" whereby defendants made material misrepresentations and omissions to the public).

require that the situations of the named representatives and the class members be identical." *In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 238 (S.D.N.Y. 2006) (quotation omitted). Rather, so long as "the disputed issue of law or fact occup[ies] essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class," *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 280 (S.D.N.Y. 2003) (internal citations omitted), "the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993); *see also Toure v. Central Parking Sys. of New York*, No. 05 Civ. 5237 (WHP), 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007).

As the Court has previously found, Lead Plaintiff "easily meets" the requirement of typicality.  Order on Consolidation and Appointment of Lead Plaintiff and Counsel, ECF 24 ("Lead Plaintiff Order"), at 23.  Lead Plaintiff's claims are typical of the claims of absent members of the proposed Settlement Class because they all arise from "the same set of events": the Bear Stearns Defendants' alleged material misstatements and omissions, which allegedly artificially inflated the value of Bear Stearns common stock.  Typicality has been established in similar securities fraud cases, and it is established here. *See, e.g., Vivendi*, 242 F.R.D. at 85; *In re Interpublic Sec. Litig.,* No. 02 Civ. 6527 (DLC), 2003 WL 22509414, at *3 (S.D.N.Y. Nov. 6, 2003).

**D.**   **Lead Plaintiff and Co-Lead Counsel Will Fairly and <u>Adequately Protect the Interests of the Settlement Class</u>**

Rules 23(a)(4) and 23(g) are satisfied here because, as they require, (i) Lead Plaintiff's interests are not antagonistic to those of other Settlement Class Members, and (ii) Co-Lead Counsel are qualified, experienced, and eminently able to conduct this Action. *See In re Drexel Burnham Lambert Grp.*, 960 F.2d 285, 291 (2d Cir. 1992).

As discussed above, Lead Plaintiff purchased or otherwise acquired Bear Stearns securities during the Class Period and allegedly suffered significant losses as a result of the same course of conduct that allegedly injured other members of the Settlement Class. *See* Declaration of Patrick T. Egan, attached to Lead Plaintiff's Motion for Class Certification, ECF 227 ("Egan Decl."), Ex. 2. Therefore, Lead Plaintiff's interest in demonstrating the Bear Stearns Defendants' liability and maximizing possible recovery are aligned with the interests of the absent class members. *See, e.g., WorldCom*, 219 F.R.D. at 282 (finding that "named plaintiffs' interests are directly aligned with those of the absent class members; they are purchasers of WorldCom equity and debt securities who suffered significant losses as a result"). As this Court has previously ruled, and events have shown, Lead Plaintiff has no interest antagonistic to the interests of other members of the Settlement Class. Lead Plaintiff Order, 23 - 27.

As for the adequacy of Class Counsel, a court must consider the following: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). A court "may [also] consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Here, as the Court has previously concluded, Co-Lead Counsel are highly experienced in litigating securities class actions and will fairly and adequately prosecute the claims of the Settlement Class. Lead Plaintiff Order, at 22; *see also*, Egan Decl. Ex. 3-4 (resumes of Co-Lead Counsel). Co-Lead Counsel have further demonstrated their adequacy by the substantial work undertaken in prosecuting this action, including defeating Defendants' motions to dismiss,

pursuing extensive discovery, hiring and working with experts in various areas to prove the Settlement Class's allegations and successfully reaching a very favorable Settlement.

In view of these facts, Lead Plaintiff should be appointed Class Representative, and Co-Lead Counsel should be appointed Class Counsel.

### E.     The Requirements of Rule 23(b)(3) Are Satisfied in this Action

In addition to the four requirements of Rule 23(a), a certifiable class must also satisfy one of the three subparts of Rule 23(b).  Lead Plaintiff here seeks class certification under Rule 23(b)(3), which establishes two requirements, commonly referred to as "predominance" and "superiority," both of which are satisfied here.

### 1.     Common Questions of Law and Fact Predominate.

Under Rule 23(b)(3), questions of law or fact common to the members of a class must "predominate" over any questions affecting individual members.  The Second Circuit has stated that "[c]lass-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."  *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002).   This test is "readily met in certain cases alleging … securities fraud," including this one.  *See SCOR*, 537 F. Supp. 2d at 572 (quoting *Amchem Prods., Inc., v. Windsor*, 521 U.S. 591, 625 (1997)).

In securities fraud class actions such as this "in which the fraud is alleged to have been carried out through public communications to a wide variety of market participants, common issues of law and fact will generally predominate over individual issues."  *In re Arakis Energy Corp. Sec. Litig.*, No. 95 Civ. 3431 (ARR), 1999 WL 1021819, at *10 (E.D.N.Y. Apr. 27, 1999). In this case the Court has previously determined that the Consolidated Complaint adequately alleges that Defendants, with scienter, made material misstatements and omissions in public

statements, which caused the Settlement Class to suffer losses.  Lead Plaintiff anticipates, based on discovery, that those elements would be established through generalized proof that applies equally to each member of the Settlement Class.  *See Veeco Instruments*, 235 F.R.D. at 240.

Moreover, Lead Plaintiff's Section 10(b) claims invoke the "fraud-on-the-market" doctrine, which presumes investors' reliance and precludes any argument that issues of individual reliance defeat class certification.  *See In re Salomon Analyst Metromedia Litig.*, 544 F.3d 474, 481 (2d Cir. 2008) ("where a defendant has (1) publicly made (2) a material misrepresentation (3) about stock traded on an impersonal, well-developed (*i.e.*, efficient) market, investors' reliance on those misrepresentations may be presumed.") (citing *Basic v. Levinson*, 485 U.S. 224, 248 n.27 (1988)).  That Bear Stearns securities traded on an efficient market through the Class Period has been established by Lead Plaintiff's class certification expert.  *See*, Declaration of John D. Finnerty, Ph.D. in Support of Lead Plaintiff's Motion for Class Certification, ECF 230.

### 2.      A Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of this Controversy

Rule 23(b)(3) further requires that "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy," and provides the following factors for consideration when determining whether a class action is superior:  (a) the interest of class members in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) whether it is desirable to concentrate litigation of claims in this forum; and (d) the manageability of a class action.  These factors favor certification here.

Given the size and geographical dispersion of the proposed Settlement Class and the likelihood that many purchasers will have sustained comparatively small losses, the

circumstances here are precisely those for which a class action is appropriate.  It also is desirable

to consolidate the litigation of claims here because common legal and factual issues predominate,

and the alternative – the individual adjudication of Settlement Class Members' claims – would

be extremely burdensome and risk inconsistency.  *See WorldCom*, 219 F.R.D. at 304 (class

action  will avoid "disparate results, [and individual actions which] threaten to increase the costs

of litigation for all parties exponentially.")

## VI.   PROPOSED SCHEDULE OF EVENTS

Lead Plaintiff proposes the following schedule for the Settlement-related events in this

case.  The proposed schedule in the right column is respectfully requested.[7]

| Event | Proposed Due Date |
| --- | --- |
| Deadline for mailing the Notice and Proof of Claim to Settlement Class Members ("Notice Date") | 10 business days after entry of Preliminary Approval Order |
| Deadline for publishing the Summary Notice | 14 calendar days after the Notice Date |
| Deadline for filing of papers in support of approval of Settlement, Plan of Allocation, and Co-Lead Counsel's request for attorneys' fees and expenses | 35 calendar days prior to Settlement Hearing |
| Deadline for submitting exclusion requests or objections | 21 calendar days prior to Settlement Hearing |
| Deadline for filing reply papers | 7 calendar days prior to the Settlement Hearing |
| Settlement Hearing | The week of September 17, 2012 |
| Deadline for submitting claim forms | 120 calendar days after the Notice Date |

## VII.   CONCLUSION

For all of the foregoing reasons, Lead Plaintiff respectfully requests that this Court: (a)

preliminarily approve the Settlement, including approving the form and substance of the

---

[7] The only specific date that needs to be established is the date of the Settlement Hearing.

proposed forms of notice and directing that notice be given to the members of the Settlement

Class; (b) preliminarily certify the Settlement Class; (c) appoint Lead Plaintiff and Co-Lead

Counsel as Class Representative and Class Counsel, respectively; (d) schedule a hearing at which

approval of the Settlement, plan of allocation and an award of attorneys' fees and litigation

expenses to Co-Lead Counsel may be considered; and (e) grant such further relief as the Court

deems just and proper.

Dated:  June 6, 2012                                    Respectfully submitted,

                                                       **LABATON SUCHAROW LLP**

                                                       By: _Thomas A Dubbs/pp_

                                                       Thomas A. Dubbs (TD-9868)
                                                       James W. Johnson (JJ-0123)
                                                       Craig A. Martin (CM-0901)
                                                       140 Broadway
                                                       New York, New York 10005
                                                       Telephone:     (212) 907-0700
                                                       Facsimile:     (212) 818-0477

                                                       **BERMAN DEVALERIO**

                                                       By: _Joseph J. Tabacco/PTE_

                                                       Joseph J. Tabacco, Jr. (JJT-1994)
                                                       One California Street Suite 900
                                                       San Francisco, California 94111
                                                       Telephone:     (415) 433-3200
                                                       Facsimile:     (415) 433-6382

                                                       Patrick T. Egan (PE-6812)
                                                       John H. Sutter (Pro Hac Vice)
                                                       One Liberty Square
                                                       Boston, Massachusetts 02109
                                                       Telephone:     (617) 542-8300
                                                       Facsimile:     (617) 542-1194

                                                       *Co-Lead Counsel for Lead Plaintiff and*
                                                       *the Proposed Settlement Class*