UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE THE BEAR STEARNS COMPANIES, INC. SECURITIES, DERIVATIVE, AND ERISA LITIGATION | ) ) ) ) ) ) ) ) ) ) | MASTER FILE No.: <u>08 MDL No. 1963 (RWS)</u> |
| This Document Relates to: | | |
| Securities Action, 08 Civ. 2793 (RWS) | | |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR A DISTRIBUTION ORDER APPROVING ADMINISTRATIVE DETERMINATIONS AND DIRECTING PAYMENT OF NET SETTLEMENT FUNDS**

**LABATON SUCHAROW LLP**
Thomas A. Dubbs (TD-9868)
James W. Johnson (JJ-0123)
Nicole M. Zeiss (NZ-3894)
140 Broadway
New York, NY 10005

**BERMAN DEVALERIO**
Joseph J. Tabacco, Jr. (JJT-1994)
One California Street, Suite 900
San Francisco, CA 94111
Tel: (415) 433-3200
Fax: (415) 433-6382

Patrick T. Egan (PE-6812)
One Liberty Square
Boston, MA 02109
Tel: (617) 542-8300
Fax: (617) 542-1194

*Co-Lead Counsel for Lead Plaintiff The State of Michigan Retirement Systems and Class Counsel for the Settlement Class*

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................. 1

II.  BACKGROUND .................................................................................................. 3

III. CLAIMS ADMINISTRATION ............................................................................ 5

   A.   Procedures and Review ................................................................................ 5

   B.   Recommended Disposition of Proofs of Claim ........................................... 6

        1.   Lead Plaintiff Recommends that the Claims Administrator's Eligibility Deterimininations Be Approved ............................................. 6

        2.   Lead Plaintiff Recommends that the Court Accept Late Filed But Otherwise Valid Claims ................................................................ 7

   C.   Claims-In-Process ......................................................................................... 7

        1.   The Vast Majority of the Claims-in-Process Concern CAP/RSU Units ........................................................................................ 8

        2.   Unresolved Institutional/Complex Claims ....................................... 8

   D.   Claimants Requesting Judicial Review ........................................................ 9

IV.  PROPOSED DISTRIBUTION PLAN FOR NET SETTLEMENT FUNDS ...... 9

V.   FEES AND EXPENSES OF CLAIMS ADMINISTRATOR ............................ 12

VI.  BAR DATE AND DOCUMENT RETENTION ............................................... 13

VII. CONCLUSION ................................................................................................... 14

Lead Plaintiff the State of Michigan Retirement Systems ("Lead Plaintiff"), pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, respectfully submits this memorandum in support of its motion for entry of the proposed Order Approving Administrative Determinations and Directing Payment of Net Settlement Funds ("Distribution Order") in the above-captioned action ("Action"), consistent with the accompanying Declaration of Jason Zuena in Support of Lead Plaintiff's Motion for a Distribution Order Approving Administrative Determinations and Directing Payment of Net Settlement Funds ("Zuena Declaration") submitted on behalf of the Court-approved claims administrator, The Garden City Group, Inc. ("GCG"). The Settling Defendants take no position on the motion.

## I.    INTRODUCTION

In November 2012, the Court approved the Settlements with the Bear Stearns Defendants[1] and Deloitte & Touche LLP ("Deloitte"), totaling $294,900,000 in cash. As of today, the claims administration process is essentially complete. GCG has processed and analyzed more than 52,000 Proof of Claim and Release Forms ("Proofs of Claim") and is now in a position to recommend the Distribution Plan for the Net Settlement Funds. Accordingly, Lead Plaintiff hereby applies for the Distribution Order that will allow for the distribution of the Net Settlement Funds (*i.e.*, the Settlement Amounts plus accrued interest less all Court-approved fees and expenses) to 15,695 currently eligible Authorized Claimants, pursuant to the terms of the Court-approved Plan of Allocation, and provide a plan for addressing a finite small subset of outstanding claims that require additional processing ("Claims-in-Process," as explained below), the claims of claimants requesting judicial review ("Disputed Claims," as explained below), and any remaining funds due to uncashed checks, returned funds, tax refunds, etc. The approximately

---

[1] "Bear Stearns Defendants" refers to The Bear Stearns Companies, Inc. ("Bear Stearns" or the "Company"), James E. Cayne, Alan D. Schwartz, Warren J. Spector, Alan C. Greenberg, Samuel L. Molinaro, Jr., Michael Alix, and Jeffrey M. Farber.

1,000 Claims-in-Process, most involving Restricted Stock Units ("RSUs") and Capital Accumulation Plan ("CAP") units granted to Bear Stearns employees, and 22 Disputed Claims represent just 2.2% of the total Proofs of Claim received to date. The proposed Distribution Plan will provide for the immediate payment as to more than 15,000 eligible Proofs of Claim.

Because the overwhelming majority of eligible claimants can now receive substantially all, or in many cases all, of their allotted recovery while certain limited open issues are resolved over the next few months, Lead Plaintiff proposes a staggered process to allow for distribution of 90% of the net proceeds of the Settlements to identified valid claimants now. Lead Plaintiff contemplates a second motion in the coming months, once the processing of the remaining Claims-in-Process is complete and any issues regarding Disputed Claims are ripe for judicial determination. As described more fully below, the Claims-in-Process require additional processing because of their complexity and the extent of the supporting documentation provided. Rather than allowing this limited subset of complex claims to delay distribution to the vast majority of eligible claimants whose Proofs of Claim have been accepted as valid, Lead Plaintiff recommends distributing 90% of the Net Settlement Funds now to all identified Authorized Claimants, and holding back 10% as a "reserve" fund sufficient to pay any Claims-in-Process and/or Disputed Claims that are ultimately deemed eligible for payment.[2] Any funds remaining after these two distributions will be part of a supplemental distribution to certain Authorized Claimants, as described below. Lead Plaintiff and GCG believe that this Distribution Plan is the best way to put money into the hands of Authorized Claimants as quickly and efficiently as possible.

---

[2] As detailed in the accompanying Zuena Declaration, the claims adminsitrator is confident that the 10% "reserve" is more than sufficient to cover all Claims-in-Process and Disputed Claims. Zuena Decl. ¶ 11.

If entered, the accompanying proposed Distribution Order will, *inter alia*: (i) approve the administrative determinations of GCG concerning the vast majority of Proofs of Claim submitted, but preserving for a later date the resolution of Claims-in-Process and Disputed Claims; (ii) approve payment to a relatively small number of claimants who filed late but otherwise valid Proofs of Claim after the October 25, 2012 deadline but on or before June 15, 2013; (iii) direct the distribution of 90% of the Net Settlement Funds to Authorized Claimants whose claims have been accepted as valid and approved by the Court according to the Distribution Plan described below and in the Zuena Declaration; (iv) direct that distribution checks must be cashed within 120 days after the issue date; (v) approve payment of GCG's outstanding fees and expenses incurred in connection with the administration of the Settlements; (vi) establish June 15, 2013 as the bar date beyond which no new claims will be allowed; and (vii) authorize destruction of Proofs of Claim after the final distribution is complete.

## II.  BACKGROUND

The terms of the Settlements are embodied in the Stipulation and Agreement of Settlement with the Bear Stearns Defendants dated as of June 5, 2012, as amended ("Bear Stearns Stipulation") and the Stipulation and Agreement of Settlement with Deloitte dated as of June 11, 2012, as amended (the "Deloitte Stipulation") (together, the "Stipulations").[3] Pursuant to the Stipulations, collectively the Bear Stearns Defendants and Deloitte paid Settlement Amounts of $294,900,000 to settle the claims alleged in the Action. The Settling Defendants have deposited the Settlement Amounts in interest-bearing escrow accounts.

---

[3] Unless otherwise noted, all capitalized terms not otherwise defined herein have the same meaning as that set forth in the Stipulations.

3

In June 2012, this Court entered orders preliminarily approving the Settlements. (*See* ECF Nos. 288, 289.)[4] Pursuant to these orders, Co-Lead Counsel retained GCG to print and mail copies of the Notice of Pendency of Class Action and Proposed Settlements with the Bear Stearns Defendants and Deloitte and Motion for Attorneys' Fees and Expenses ("Notice") and Proof of Claim (together with the Notice, the "Claim Packet") to potential members of the Settlement Class,[5] to publish the Summary Notice of Pendency of Class Action and Proposed Settlements with the Bear Stearns Defendants and Deloitte and Motion for Attorneys' Fees and Expenses, to process the Proofs of Claim submitted, and to effectuate distribution of the Net Settlement Funds.

On September 19, 2012, this Court held a hearing to consider the proposed Settlements. By orders and final judgments dated November 29, 2012, the Court finally approved the Settlements and the Plan of Allocation and directed the parties to implement and consummate the Stipulations in accordance with their terms and provisions. (ECF Nos. 336, 337.) No person appealed the Court's final approval orders. Thus, under paragraph 40 of the Stipulations, the Effective Date for the Settlements has occurred, and distribution of the Net Settlement Funds can be made.

Accordingly, pursuant to paragraph 22 of the Stipulations, Co-Lead Counsel seek entry of the Distribution Order, under which the Net Settlement Funds may be distributed to Authorized Claimants upon entry by the Court.

---

[4] All references to ECF docket numbers refer to documents filed in the lead case, No. 08-md-01963.

[5] The Orders and Final Judgments, dated November 29, 2012, define the Settlement Class as all Persons, other than Excluded Persons, who during the period from December 14, 2006 to and through March 14, 2008, inclusive, (the "Class Period") purchased or otherwise acquired the publicly traded common stock or other equity securities, or call options of or guaranteed by Bear Stearns, or sold Bear Stearns put options, either in the open market or pursuant or traceable to a registration statement, and were damaged thereby. The Settlement Class also includes all persons who received Bear Stearns CAP Units and RSUs that had fully vested, entitling them to an equivalent number of shares of Bear Stearns common stock upon settlement at the end of a deferral period, during the Class Period, as part of their compensation as an employee with Bear Stearns and participation in its CAP and RSU Plan.

4

### III. CLAIMS ADMINISTRATION

GCG mailed more than 230,000 Claim Packets to Class Members and nominees. Zuena Decl. ¶ 5. Under the terms of the Stipulations and Notice, all Class Members wishing to participate in the distribution of the Net Settlement Funds were required to submit Proofs of Claim no later than October 25, 2012. GCG has received and processed more than 52,000 Proofs of Claim. *Id.* ¶ 8.

As a result of GCG's review and processing of the Proofs of Claim, as detailed in the sections below, GCG has prepared detailed Administrator Reports of: (1) Authorized Claimants who submitted timely and eligible claims; (2) Authorized Claimants who submitted late but otherwise eligible claims by June 15, 2013; and (3) all wholly rejected or ineligible Proofs of Claim received through June 15, 2013. These reports are annexed as Exhibits B-1, B-2, and B-3 to the Zuena Declaration, respectively. Zuena Decl. ¶ 40. GCG has also identified a limited subset of approximately 1,000 Claims-in-Process that require additional processing and 22 Disputed Claims from claimants requesting judicial review of GCG's determination that their Proofs of Claim be rejected. *Id.* ¶¶ 10, 42-45.

#### A. Procedures and Review

With respect to GCG's extensive review process, Proofs of Claim submitted by mail were prepped, sorted, and scanned into an electronic system. Zuena Decl. ¶ 15. The Proofs of Claim were then evaluated and processed according to a complex claim code procedure to identify the types and conditions of the Proofs of Claim. *Id.* ¶¶ 16-17. Additionally, of the more than 52,000 Proofs of Claim received and processed, approximately 36,000 were submitted electronically. *Id.* ¶ 18. These Proofs of Claim were reviewed and evaluated by an Electronic Filing Team and coded similarly to the paper Proofs of Claim. *Id.* ¶¶ 19-23. GCG's computer staff also designed

5

numerous programs for each stage of the administration, as needed, to facilitate efficient processing of the claims. *Id.* ¶ 38.

GCG next made substantial efforts, by way of deficiency or rejection letters and an outreach campaign, to cure any Proofs of Claim with deficiencies. *Id.* ¶¶ 25-35 & Ex. A (sample deficiency and rejection letters). GCG mailed or emailed thousands of deficiency and rejection letters and followed-up with telephone calls to claimants. *Id.* ¶¶ 26, 28, 30-35. Responses to the deficiency letters were then scanned, reviewed, and evaluated. *Id.* ¶ 27. All deficiency and rejections letters advised claimants that if the claimant disputed GCG's administrative determination, the claimant could request this Court's review of the determination. *Id.* ¶ 29. The process was designed to cure as many deficiencies in the Proofs of Claim as possible and advise claimants of their rights.

The administration was also subject to GCG's rigorous Quality Assurance review processes at each stage of the project, from the initial proofs of claim handling to a final project "wrap-up." *Id.* ¶¶ 36-38. These efforts enabled accurate review of the claims and ensured GCG made correct eligibility determinations.

**B.    Recommended Disposition of Proofs of Claim**

**1.    Lead Plaintiff Recommends that the Claims Administrator's Eligibility Determininations Be Approved**

Among the more than 52,000 Proofs of Claim received and processed to date, 15,695 were determined by GCG to be eligible in whole or in part to receive a payment from the Net Settlement Funds. Zuena Decl. ¶ 39 & Exs. B-1, B-2. A total of 35,585 were administratively rejected after exhaustion of the deficiency process (these claimants have not requested judicial review). *Id.* & Ex. B-3. Accordingly, Lead Plaintiff respectfully requests that the Court authorize distribution of the Net Settlement Funds to the 15,695 eligible Authorized Claimants identified

by GCG, and reject those designated for rejection where such claimants have not requested judicial review.

### 2.     Lead Plaintiff Recommends that the Court Accept Late Filed But Otherwise Valid Claims

Through June 15, 2013, GCG received and processed 1,031 Proofs of Claim that were postmarked after the Court-established October 25, 2012 deadline. Zuena Decl. ¶ 41. Of these, 354 are, but for their late submission, otherwise eligible. *Id.* Although these claims were late, their volume is typical of the number received in securities class action settlements of this size and they were received while the processing of timely claims was ongoing. *Id.* Due to the amount of time needed to process the timely claims received, the processing of these late claims did not delay the claims administration process nor will it delay the distribution of the Net Settlement Funds. *Id.* Moreover, the payment of these late claims will not materially dilute the recoveries of timely Authorized Claimants. *Id.* Co-Lead Counsel believe that, when the equities are balanced, it would be unfair to deny payment of an otherwise eligible claim received while claims were still being processed because it was submitted after the Court-approved claims filing deadline. Therefore, Lead Plaintiff respectfully requests that these Proofs of Claim be approved as eligible for payment.[6]

### C.     Claims-In-Process

As noted above, a certain number of Proofs of Claim require additional time to process due to their complexity. These Claims-in-Process comprise a small subset, about 2.2%, of the 52,000 Proofs of Claim received. Zuena Decl. ¶ 42. As detailed in the Zuena Declaration,

---

[6] The Court has discretion to accept Proofs of Claim submitted after the approved filing deadline under the terms of the Settlements. The Stipulation provides that "Any Settlement Class Member who fails timely to submit a valid Proof Claim . . . will not be entitled to receive any of the proceeds from the Net Settlement Fund, *except as otherwise ordered by the Court* . . . ." Bear Stearns Stipulation ¶ 26; Deloitte Stipulation ¶ 26 (emphasis added). *See also* Bear Stearns Stipulation ¶ 29(b); Deloitte Stipulation ¶ 29(b) (allowing for late claims to be accepted by order of the Court or in the discretion of Co-Lead Counsel).

7

additional time is needed to complete the review of the Claims-in-Process, and to process and review any additional documentation GCG may receive, in order to afford the affected claimants an opportunity to cure their deficiencies. *Id.*

So as not to delay a distribution to the more than 15,000 claimants eligible to participate in the Settlements, Lead Plaintiff requests, and CGC agrees, that the Court permit the immediate distribution to those with eligible claims now, and that any Claims-in-Process that are ultimately determined to be eligible to participate in the Settlements will be paid as part of the Reserve Distribution, described below. *See* Zuena Decl. ¶ 11.

### 1. The Vast Majority of the Claims-in-Process Concern CAP/RSU Units

Nearly all of the Claims-in-Process concern securities Bear Stearns offered to certain of its employees. *Id.* ¶ 43. As part of certain employee compensation programs, Bear Stearns issued securities in the form of Capital Accumulation Plan units or Restricted Stock Units (together, "CAP/RSU units"). *Id.* Claims submitted containing CAP/RSU units were frequently voluminous, unusually complex, and based on extensive supporting documentation. *Id.* While processing these claims, GCG identified unique processing complexities inherent to these securities that required a multi-step procedure necessary to calculate these claims. *Id.* For example, for each transaction contained in a CAP/RSU claim, GCG may have had to take into account a vesting schedule and multiple conversion factors (between Bear Stearns and JP Morgan shares), and extrapolate the beginning holding positions based on grant and vesting dates, as appropriate. *Id.* Given these challenges, GCG's review of just over 900 CAP/RSU-related claims is ongoing.

### 2. Unresolved Institutional/Complex Claims

Additionally, GCG continues to work with certain institutional or other claimants that submitted large and/or complex claims on or before June 15, 2013, but are still perfecting their

submissions. *Id.* ¶ 44. Co-Lead Counsel and GCG respectfully request that these 232 unresolved institutional/complex claims be considered Claims-in-Process that, to the extent they are ultimately determined eligible to participate in the Settlements, will receive payment as part of the Reserve Distribution.

### D. Claimants Requesting Judicial Review

The deficiency and rejection letters mailed by GCG specifically stated that claimants had the right to contest GCG's administrative determination rejecting their Proofs of Claim and to request review by the Court. Zuena Decl. ¶ 46; *see also id.* at Ex. A. To date, GCG has received requests for judicial review from 36 claimants contesting GCG's administrative rejection of their Proofs of Claim ("Disputed Claims"). *Id.* As of July 8, 2013, however, GCG has been able to resolve 14 of these disputes upon receipt of additional information or documentation, reducing the number of disputes to just 22 claims, or 0.0004% of the Proofs of Claim received. *Id.* ¶¶ 46-47; *see also id.* ¶ 25.

Since GCG is still working to resolve these disputes and because it is possible that there may be additional disputed claims among the Claims-in-Process, or that perhaps some of the disputes may be resolved, Lead Plaintiff respectfully requests that all Disputed Claims be presented to the Court for review at the time of the Reserve Distribution. Thus, the present proposed Distribution Order preserves the due process rights of all claimants who have disputed determination of their claims, allowing for such disputes to be resolved in an orderly fashion without holding up distribution to the thousands of verified eligible claims.

### IV. PROPOSED DISTRIBUTION PLAN FOR NET SETTLEMENT FUNDS

GCG, in consultation with Co-Lead Counsel, has developed the following Distribution Plan, which will allow for the fair and expeditious distribution of the Net Settlement Funds,

9

pursuant to the Plan of Allocation and Stipulations, until the funds are exhausted. *See* Zuena Decl. ¶ 48.

The key components of the Distribution Plan are: (1) an immediate Distribution of 90% of the Net Settlement Funds to all identified eligible claimants; (2) a Reserve Distribution, upon motion to the Court, to pay any Claims-in-Process and/or Disputed Claims ultimately deemed eligible; and (3) a Supplemental Distribution of any funds remaining after the Distribution and Reserve Distribution and due to uncashed or returned checks to eligible Authorized Claimants. *Id.*

The staggered process is consistent with the fact that multiple distributions of a net settlement fund are customarily made in order to exhaust the settlement fund, as funds often remain after a distribution because of uncashed checks or tax refunds. *Id.* ¶ 11. GCG has successfully implemented a similar reserve approach to expedite distributions to Authorized Claimants in several of its administrations, including *WorldCom*, *Nortel I*, *Nortel II*, *Tyco*, and *Broadcom*. *Id.*

GCG will carry out the Distribution as follows:

- GCG will initially calculate the *pro rata* shares for all 15,695 Authorized Claimants as if the entire Net Settlement Funds were to be distributed now.

- As described in the Notice and in the Court-approved Plan of Allocation, GCG will eliminate from the distribution any Authorized Claimant whose payment would be less than $10. GCG will then re-calculate the remaining Authorized Claimants *pro rata* shares.

10

- Authorized Claimants whose payments are less than $100 will be paid in full during the Distribution ("Claims Paid in Full"). These claimants will get no additional funds in subsequent distributions.

- After deducting the payments to Claims Made in Full, GCG will distribute 90% of the remaining balance of the Net Settlement Funds to Authorized Claimants whose payments are $100 or more.

- Claimants receiving a check during the Distribution will have 120 days to cash their checks.

- The remaining 10% of the Net Settlement Funds will be held in reserve to pay any Claims-in-Process or Disputed Claims that are ultimately deemed eligible for payment. Zuena Decl. ¶ 48(a).

The Reserve Distribution will take place after the Claims-in-Process are complete and the Disputed Claims are resolved. Lead Plaintiff anticipates making such a motion no later than October 31, 2013. The motion will seek approval of GCG's administrative determinations concerning the Claims-in-Process and adjudication of any remaining Disputed Claims. Any Claims-in-Process or Disputed Claims found eligible for payment will be paid from the 10% reserve such that their payments as a percentage of their Recognized Losses will be the same as the Authorized Claimants who received payments from 90% of the Net Settlement Funds during the Distribution. *Id.* ¶ 48(a)(6). In this way, the Claims-in-Process and Disputed Claims deemed eligible will be brought to parity with the other Authorized Claimants. As noted, GCG carefully estimated the reserve amount and concluded that reserving 10% of the Net Settlement Funds will be more than sufficient to cover the Claims-in-Process and Disputed Claims. *Id.* ¶ 11.

After the 120-day check stale date has passed for checks issued during the Distribution and Reserve Distribution, GCG will conduct a Supplemental Distribution. *Id.* ¶ 48(a)(9). This distribution will include any funds left over from the 10% reserve that were not used to pay Claims-in-Process or Disputed Claims. Since the 10% reserve is a conservative estimate of the funds needed to cover any Claims-in-Process and Disputed Claims found eligible, it is expected that sufficient funds will remain following the Reserve Distribution that, when combined with funds from uncashed or returned checks, will make the Supplemental Distribution to Authorized Claimants economically feasible. Moreover, supplemental distributions are standard in securities class action administrations in order to distribute as much of a settlement fund as possible. In the Supplemental Distribution, GCG will distribute all remaining funds (less any claims administration expenses, taxes, or tax return preparation fees) in the Net Settlement Funds to all Authorized Claimants who (i) are not Claims Paid in Full and (ii) cashed their checks in the Distribution or Reserve Distribution. Zuena Decl. ¶ 48(b).

Lead Plaintiff submits that the administration of the Settlements and the proposed Distribution Plan fully complies with the terms of the Stipulations and the Plan of Allocation approved by the Court. Accordingly, Lead Plaintiff respectfully requests that the Court enter the accompanying proposed Distribution Order.

## V. FEES AND EXPENSES OF CLAIMS ADMINISTRATOR

Pursuant to the Paragraph 9 of the Stipulations, the Settlement Funds shall be used to pay fees and expenses incurred in connection with the administration and distribution of the Settlements. GCG was retained to provide notice to the Settlement Class and administer the claims received with regard to the Settlements. In connection with that work, GCG disseminated more than 230,000 copies of the Notice, received and responded to thousands of telephone

communications from potential Class Members, and received and evaluated more than 52,000 Proofs of Claim. *See* Zuena Decl. ¶¶ 5, 8-47.

The total outstanding fees and expenses for GCG's work is $961,230.78. *See* Zuena Decl. ¶ 49; *see also id.* ¶¶ 8-47 (detailing the work performed) & Ex. C. This amount includes all unpaid fees and expenses that GCG incurred to date and those that it expects to incur through the Distribution under the terms of the proposed Distribution Plan.

Lead Plaintiff respectfully requests that the Court approve payment of all of GCG's outstanding fees and expenses.

## VI.     BAR DATE AND DOCUMENT RETENTION

As recommended by GCG, in order to facilitate the efficient distribution of the Net Settlement Funds, there must be a final cut-off date after which no other claims may be accepted. Accordingly, Lead Plaintiff respectfully requests the Court order that no Proof of Claim received after June 15, 2013 be eligible for payment for any reason whatsoever. *See* Zuena Decl. ¶ 48(b).

Finally, Lead Plaintiff respectfully requests approval of GCG's document retention plan, under which GCG will destroy (i) all paper copies of Proofs of Claim and all supporting documentation one year after the Supplemental Distribution and (ii) all electronic copies of Proofs of Claim after all funds in the Net Settlement Funds have been distributed. *See* Zuena Decl. ¶ 48(c).

## VII.   CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court enter the proposed Distribution Order.

Dated:   July 11, 2013

Respectfully submitted,

**LABATON SUCHAROW LLP**

By: /s/ Thomas A. Dubbs, Jr.

Thomas A. Dubbs (TD-9868)
James W. Johnson (JJ-0123)
Nicole M. Zeiss (NZ-3894)
140 Broadway
New York, NY 10005

**BERMAN DEVALERIO**

By:_____

Joseph J. Tabacco, Jr. (JJT-1994)
One California Street, Suite 900
San Francisco, CA 94111
Tel: (415) 433-3200
Fax: (415) 433-6382

Patrick T. Egan (PE-6812)
One Liberty Square
Boston, MA 02109
Tel: (617) 542-8300
Fax: (617) 542-1194

*Co-lead Counsel for Lead Plaintiff State of
Michigan Retirement Systems and
Class Counsel for the Settlement Class*

14

## VII. CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court enter the proposed Distribution Order.

Dated: July 11, 2013

Respectfully submitted,

**LABATON SUCHAROW LLP**

By:_____

Thomas A. Dubbs (TD-9868)
James W. Johnson (JJ-0123)
Nicole M. Zeiss (NZ-3894)
140 Broadway
New York, NY 10005

**BERMAN DEVALERIO**

By: /s/ Joseph J. Tabacco, Jr. //by: M.D.C.

Joseph J. Tabacco, Jr. (JJT-1994)
One California Street, Suite 900
San Francisco, CA 94111
Tel: (415) 433-3200
Fax: (415) 433-6382

Patrick T. Egan (PE-6812)
One Liberty Square
Boston, MA 02109
Tel: (617) 542-8300
Fax: (617) 542-1194

*Co-lead Counsel for Lead Plaintiff State of Michigan Retirement Systems and Class Counsel for the Settlement Class*