UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



------------------------------------------------X

IN RE BEAR STEARNS COMPANIES, INC.
SECURITIES, DERIVATIVE, AND ERISA       08 MDL 1963
LITIGATION

This Document Relates To:

    Securities Action, 08 Civ. 2793

------------------------------------------------X

BRUCE S. SHERMAN,

                    Plaintiff,         09 Civ. 8161

    -against-

                                OPINION

BEAR STEARNS COMPANIES INC., JAMES CAYNE,
WARREN SPECTOR AND DELOITTE & TOUCHE
LLP,

                    Defendants.

------------------------------------------------X

            Counsel for Plaintiff

            BOIES, SCHILLER & FLEXNER LLP
            26 South Main Street
            Hanover, NH 03755
            By:  Richard B. Drubel, Esq.


            Counsel for Defendants

            PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
            1285 Avenue of the Americas
            New York, NY 10019
            By:  Jessica S. Carey, Esq.

**Sweet, D.J.**

Defendants The Bear Stearns Companies Inc. ("Bear Stearns"), James E. Cayne, and Warren J. Spector (together, "Defendants") have moved pursuant to Federal Rules of Civil Procedure 16, 26, and 37, to strike the revised expert report (the "Revised Report") of Dr. John D. Finnerty ("Finnerty") served by Plaintiff Bruce S. Sherman ("Plaintiff") on December 21, 2016. Based upon the conclusions set forth above, the Revised Report is stricken.

## I. Prior Proceedings

The procedural history and factual background of the underlying multidistrict litigation has been detailed in various opinions by this Court. *See, e.g., In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, No. 08 CIV. 2793, 2014 WL 4443458, at *1 (S.D.N.Y. Sept. 9, 2014) (hereinafter, "*In re Bear Stearns*"); *In re Bear Stearns*, 909 F. Supp. 2d 259, 263 (S.D.N.Y. 2012); *In re Bear Stearns*, 763 F. Supp. 2d 423 (S.D.N.Y. 2011), *on reconsideration*, No. 07 CIV. 10453, 2011 WL 4072027 (S.D.N.Y. Sept. 13, 2011), and *on reconsideration*, No. 07 CIV. 10453, 2011 WL 4357166 (S.D.N.Y. Sept. 13, 2011).

The Plaintiff filed his complaint on September 24, 2009 alleging securities violations by the Defendants. This and similar actions were determined to be part of a multidistrict litigation, 08 MDL 1963 (RWS).

Plaintiff's complaint alleges that he purchased a large block of Bear Stearns common shares between June 25, 2007 and March 13, 2008 at prices ranging from $53.77 to $140.76 per share. He sold 229,150 shares of Bear Stearns common stock on March 19, 2008 at the price of $5.23 per share. Sherman alleges Defendants misrepresented Bear Stearns's financial condition, including the value of Bear Stearns's mortgage assets, the nature of its risk management, and the adequacy of Bear Stearns's capital and liquidity, leading Sherman to purchase and retain Bear Stearns common stock, ultimately suffering massive losses.

Sherman proffered Finnerty as an expert in loss causation and the damages Sherman suffered as a result of the conduct alleged. Finnerty concluded that, on March 14 and March 17, 2008, Bear Stearns's stock price fell due to corrective disclosures that revealed alleged fraud at Bear Stearns, and from December 20, 2007 through March 13, 2008 (the "Leakage Period"), Bear Stearns's stock price fell because news of the

2

alleged fraud "leaked" into the market. According to Finnerty, as a result of the revelation of the alleged fraud via both corrective disclosures and leakage, Plaintiff's damages were over $13 million.

On April 16, 2015, Defendants served a rebuttal expert report from Professor Allen Ferrell ("Ferrell"), which responded to Finnerty's report, cataloguing a number of significant flaws in Finnerty's loss causation methodology and calculation of Plaintiff's damages. Defendants deposed Finnerty on May 14, 2015, and expert discovery closed on June 22, 2015.

On August 17, 2015, Defendants moved to exclude Finnerty's report and testimony as unreliable under Federal Rule of Evidence ("FRE") 702.

By order of July 5, 2016 (the "July 5 Order"), the report and testimony of Dr. John D. Finnerty was excluded. The July 5 Order determined that Finnerty's report and testimony were inadmissible under FRE 702, because Finnerty's leakage methodology for estimating loss causation and damages had not been generally accepted by courts or the scientific community, or subjected to peer review, and because Finnerty's methodology

3

failed adequately to account for the impact of non-fraud related information and effects on Bear Stearns's stock price.

The Plaintiff moved to clarify whether the ruling applied to "only those portions of Finnerty's report addressing leakage (as distinct from corrective disclosures)." By order of December 6, 2016 (the "December 6 Order"), this Court stated that the July 5 Order "excluded the entirety of Finnerty's report as it was written, merging the two damages calculations." On December 21, 2016, Plaintiff sent an email to Defendants attaching the Revised Report. No leave to submit a Revised Report was sought by the Plaintiff.

This case was part of a multidistrict litigation that was settled by opinion granting the Lead Plaintiff's motion for a distribution order approving administrative determinations and directing distribution of reserved settlement funds dated July 8, 2014. *See* Docket of Case No. 08 Md. 1963, ECF No. 448. Plaintiff in the instant action opted out of the multidistrict litigation in June 2013, discovery proceeded, and this case is set for trial on October 2, 2017.

The instant motion to exclude the Revised Report was heard and marked fully submitted on April 18, 2017.

4

## II. The Revised Report

The Revised Report repeats much of Finnerty's original loss causation analysis, omitting any explicit reference to his leakage theory. Of the 136 pages in Finnerty's original report, 127 appear nearly verbatim in the supposedly Revised Report. *See* Decl. of Jessica S. Carey, Ex. C. (Redline Comparing Original Report and Revised Report) [hereinafter, the "Redline"]. The damages analysis has been modified to exclude damages due to leakage.

## III. The Revised Report is Excluded under the July 5 and December 6 Orders

The July 5 Order held that "The Finnerty Report fails to qualify under Rule 702 for lack of general acceptance and for not having been subject to peer-review" and that "The Finnerty methodology does not qualify under Rule 702 for failure to control for non-fraud factors". *See* Sealed Opinion dated July 5, 2016 at pp. 25, 29. It also denied Defendants' motion for summary judgment on the issue of loss causation or material misstatements or omissions. *See id.* at p. 49. The December 6 Order sought to clarify the July 5 Order. As evidenced by the instant motion, that effort was not overwhelmingly successful.

5

The present submissions and hindsight will hopefully resolve the issues presented.

> The December 6 Order, in full, stated:
>
> Though the July 5 Opinion recognized that a genuine dispute of material fact exists with respect to loss causation as a result of alleged corrective disclosures, it did not do so in the context of Finnerty's report. The Opinion excluded the entirety of Finnerty's report as it was written, merging the two damage calculations.

The December 6 Order confirmed that entirety of Finnerty's report was excluded because it relied upon the leakage theory and because that theory and the theory of loss causation as a result of corrective disclosure were merged for the purposes of damages calculation. The Revised Report does not circumvent these two orders; although the Revised Report has excised reference to leakage, the merger remains, as set forth below, and the Finnerty Report remains excluded in its Revised form.

### A. The Leakage Theory Remains the Foundation of the Revised Report

While explicit reference to leakage has been excised from the Revised Report, and the damages calculation has been revised downward, the Revised Report continues to justify the

Plaintiff's damages claim resulting from the allegedly fraudulent statements by the Defendants before the Plaintiff's purchases of Bear Stearns' stock in July 2007 and thereafter. This was the basis of Finnerty's leakage analysis. The corrective disclosures as put forth by the Plaintiff are the March 14, 2008 and March 17, 2008 statements concerning the emerging loan facility with JPMorgan Chase Co. ("JPMC") and the news of the acquisition of Bear Stearns by JPMC for $2 a share. The Revised Report purports to establish damages based on these alleged corrective disclosures; however, the methodology used remains rooted in the faulty leakage theory.

The Revised Report establishes that Finnerty applies the same faulty analysis this Court rejected in the July 5 Order. While in his initial report Finnerty attributed the loss calculation damages to leakage and corrective disclosures, the Revised Report repeats the backwards methodology without using the terms "leakage" and "backwardation," instead using the phrase "liquidity problems." A shorter time period is used for the Revised Report's loss calculation – from June 25, 2007 to March 13, 2008 instead of from December 20, 2007 to March 13, 2008 – but the methodology applied is the same; the Revised Report simply substitutes an assumption equivalent to the leakage assumption.

7

For example, the Revised Report states that:

> [B]etween June 25, 2007 and March 13, 2008, to be conservative, I calculated inflation per share utilizing the constant dollar method. It is my opinion that this assumption is conservative in favor of defendants because . . . based on the Bear Stearns' employee emails and other evidence cited in this expert report, . . . at least some information regarding Bear Stearns' liquidity problems adversely affected the price of its common stock prior to March 14, 2008. Accordingly, the disclosure of Bear Stearns' serious liquidity problems earlier in the Relevant Period could have led to a substantially greater loss of equity value.

Revised Report ¶ 237. This is, in effect, leakage. As another example, Finnerty removes "the Leakage Period" and uses "March 14, 2008, and extending at least as far back . . . as June 25, 2007 when [Plaintiff first purchased the relevant shares]" in a sentence explaining his calculation methodology: "I assume that the amount of inflation per share is a constant dollar amount" equal to the effect on Bear Stearns' stock price of the purported corrective disclosures that occurred on March 14, 2008 and March 17, 2008. *Id.* ¶ 236. The methodology remains unchanged.

As Ferrell explained in his rebuttal report, Finnerty assumes that the disclosure of the alleged fraud at any time from June 25, 2007 through March 13, 2008 would have had the

8

same effect on Bear Stearns's stock as the disclosures that it was entering into an emergency loan facility and being acquired for $2 per share. *See id.* However, no facts in the Revised Report support this assumption, and further, Finnerty states that the "full disclosure concerning Bear Stearns' liquidity problems, inadequate capital reserves, and the over-valuation of its assets did not occur until [March 14, 2008 and March 17, 2008]." *See id.* ¶ 207. No evidence is contained in the Revised Report that disclosure of the alleged fraud would have had the same effect had it occurred at the time of Plaintiff's purchase of Bear Stearns stock as early as June 25, 2007.

At his deposition, Finnerty testified:

> [S]tarting December 20th, '07 when they reported the first quarterly loss as a public company, . . . the liquidity situation from that point on really started to get severe and grew more and more severe until finally we had the run on the bank the end of the week of March 10th and Bear Stearns went out of business.

Finnerty Dep. Tr. at 51:3-11. He also testified that he did not analyze "the severity of the liquidity problems at Bear Stearns" during the period from December 14, 2006 through December 20, 2007, and was "not sure" that the "liquidity problems at Bear Stearns were severe enough to sink the ship," as of December 14,

9

2006. *Id.* 206:4-17. Plaintiff's expert cannot at the same time opine that Bear Stearns's alleged liquidity problems were bad enough to put it out of business as of December 20, 2007, but not before, and that the drop in Bear Stearns's stock price caused by the corrective disclosures made on March 14 and 17, 2008 would have been exactly the same had the alleged fraud been disclosed in June 2007.

Though editorially altered, the reasoning and the assumptions in the initial report that resulted in the July 5 Order remain present in the Revised Report. Under the reasoning of the July 5 Order, the Revised Report must be excluded.

**B. The Revised Report is Procedurally Deficient**

Under Rule 26(a)(2) of the Federal Rules of Civil Procedure, an expert witness must prepare a written report that contains, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them"; the expert witness must do so "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2). Rule 26(e) of the Federal Rules of Civil Procedure requires that a party "supplement or correct its disclosure" in the limited circumstance that the party discovers that a disclosure made

10

under Rule 26(a) is "in some material respect . . . incomplete or incorrect." Fed. R. Civ. P. 26(e). When a party fails to make a necessary disclosure under FRCP 26(a) or (e), "the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

The Plaintiff has contended that the Revised Report is admissible as a "supplemental" report pursuant to Rule 26(e)(2). However, under Rule 26(e), an expert may supplement his report only where he "learns that in some material respect the disclosure . . . is incomplete or incorrect." Fed. R. Civ. P. 26(e). Thus, Rule 26(e) "does not grant a license to supplement a previously filed expert report because a party wants to." *Sandata Techs., Inc. v. Infocrossing, Inc.*, 2007 WL 4157163, at *5 (S.D.N.Y. Nov. 16, 2007) (quoting *Coles v. Perry*, 217 F.R.D. 1, 3 (D.D.C. 2003) (internal quotation marks omitted)). "[E]xperts are not free to continually bolster, strengthen, or improve their reports by endlessly researching the issues they already opined upon, or to continually supplement their opinions." *Sandata*, 2007 WL 4157163, at *6. In other words, "Rule 26(e) is not . . . a vehicle to permit a party to serve a deficient opening report and then remedy the deficiency through

11

the expedient of a 'supplemental' report." *Lidle v. Cirrus Design Corp.*, 2009 WL 4907201, at *5 (S.D.N.Y. Dec. 18, 2009).

The rejection of the methodology underlying Finnerty's initial report does not render it merely "incorrect" within the meaning of Rule 26(e). If an expert's report "does not rely [on] any information that was previously unknown or unavailable to him," it is not an appropriate supplemental report under Rule 26. *Lidle*, 2009 WL 4907201, at *5-6; *see also Allen v. Dairy Farmers of Am., Inc.*, No. 5:09-cv-230, 2014 WL 2040133, at *5-6 (D. Vt. May 16, 2014) (rejecting plaintiffs' argument "that Rule 26(e) permits them to 'correct' an expert opinion in response to an adverse evidentiary ruling" because, in so ruling, the court "did not 'correct' an inaccuracy in [the expert's] opinion; it merely ruled a portion of that opinion inadmissible pursuant to Fed. R. Evid. 702").

The Plaintiff has noted the possible significance to his damages claim if the Revised Report is excluded. *See* Pl.'s Opp'n at 10. The Court recognizes that "preclusion of an expert report can be a harsh sanction." *Sandata*, 2007 WL 4157163, at *7. In determining whether preclusion is appropriate, courts must consider: (1) the reasons for the delay in providing the evidence; (2) the importance of the evidence precluded; (3) the

prejudice to the opposing party from having to address the new evidence; and (4) the possibility of a continuance. *See Softel, Inc. v. Dragon Medical and Scientific Communications, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997); *Outley v. City of New York*, 837 F.2d 587, 590-91 (2d Cir. 1988); *Lidle*, 2009 WL 4907201, at *6. "None of these factors are dispositive and each factor is to be balanced against the others in making the determination." *Lab Crafters, Inc. v. Flow Safe, Inc.*, No. CV-03-4025 (SJF)(ETB), 2007 WL 7034303, at *6 (E.D.N.Y. Oct. 26, 2007) (citing *Sofitel*, 118 F.3d at 962).

After considering these principles, it is appropriate in this Court's discretion to exclude the Revised Report. The Report does not rely on previously unknown information, and thus is not a "supplemental" report under Rule 26, nor was it submitted at the direction of the Court or anyone else. *See, e.g., Fate v. Village of Spring Valley*, 2013 WL 2649548, at *3 (S.D.N.Y. June 13, 2013) (finding that discrete portions of an expert report were admissible as written and expressly directing the party to file a new report with the stricken portions excised); *Cedar Petrochemicals*, 769 F. Supp. 2d at 278-79 (plaintiff's filing of a "supplemental report" was explicitly suggested by the defendant's attorney). Though there is no new information in the Revised Report, its admission would not be

13

harmless to Defendants, who relied upon this Court's July 5 and December 6 Orders striking this report in its entirety. Although a continuance would be possible, this case has been litigated since 2009, trial is now mere months away, and allowing deadlines to continue to slip "result[s] in the backup of other cases and eventual scheduling chaos as a series of bottlenecks builds." *Softel*, 118 F.3d at 962-63; *Grabin v. Marymount Manhattan Coll.*, 659 F. App'x 7, 11 (2d Cir. 2016).

Furthermore, preclusion is appropriate because the Revised Report relies upon the leakage methodology for loss calculation, and is in essence the same as Finnerty's initial report with different wording. Plaintiff's "attempt to resuscitate" Finnerty's report is improper. *Advanced Analytics, Inc. v. Citigroup Glob. Markets, Inc.*, 301 F.R.D. 31, 37 (S.D.N.Y.), objections overruled, 301 F.R.D. 47 (S.D.N.Y. 2014). The Revised Report "was served in violation of the Scheduling Order and constitutes a backdoor attempt to . . . re-submit, without any explanation or justification, the previously excluded [report], which was itself ordered stricken." *Id.* As such, preclusion is the appropriate sanction. *See United Magazine Co., Inc. v. Curtis Circulation Co.*, 279 Fed. App'x 14, 18 (2d Cir. 2008) (affirming district court's decision to strike a previously stricken expert report, submitted with plaintiff's

opposition papers); *Softel*, 118 F.3d at 961-63 (affirming magistrate judge and district judge's order to preclude expert reports submitted past discovery cutoff date); *Mobileye, Inc. v. Picitup Corp.*, 928 F.Supp.2d 759, 766 (S.D.N.Y.2013) (Rakoff, D.J.) (striking an untimely expert declaration, submitted with plaintiff's opposition papers, that incorporated portions of a previously stricken report); *see also Arnold v. Krause, Inc.*, 232 F.R.D. 58, 67 (W.D.N.Y.2004) ("Preclusion of a proposed expert's testimony and report, disclosed in violation of a scheduling order . . . [has been held to be] a proper sanction where the tardy expert report is offered in opposition to summary judgment." (citation omitted)).

Plaintiff decided to pursue the leakage methodology for proving loss causation and damages. Their decision resulted in the July 5 Order. As the court in *Lippe v. Bairnco Corp.* explained, when a party loses a motion — including a *Daubert* motion — the losing party "does not get a chance to come up with more evidence or to try to make a more persuasive presentation or to try to write a more coherent brief. That is not the way our system of justice works." 249 F. Supp. 2d 357, 386 (S.D.N.Y. 2003); *see also Rodgers v. Beechcraft Corp.*, 2016 WL 7888048, at *2 (N.D. Okla. Feb. 3, 2017) ("The purpose of supplementation is to correct inadvertent errors, not to allow a party to engage in

'gamesmanship'—creating a 'new and improved' expert report in order . . . to avert a dispositive motion.").

Courts have excluded improper evidence despite its importance, and this Court must do so here. *See, e.g.*, *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296-97 (2d Cir. 2006) (excluding testimony of expert witness who was not timely disclosed, even though the expert's testimony was "essential to proving . . . damages"); *Morritt v. Stryker Corp.*, No. 07-CV-2319 (RRM)(RER), 2011 WL 3876960, at *7 (E.D.N.Y. Sept. 1, 2011) (excluding parts of an expert's testimony that were "undoubtedly important because plaintiff requires expert testimony to make out a prima facie case," and reasoning that "the great importance of this testimony only serves to underscore the inexcusable quality of its delayed submission" (internal quotation marks omitted)); *see also Grabin*, 659 Fed. App'x at 10-11 (affirming exclusion of testimony of witness who "may well be critical" to plaintiff's case where witness was not timely disclosed); *Spotnana, Inc. v. Am. Talent Agency, Inc.*, No. 09 Civ. 3698(LAP), 2010 WL 3341837, at *2 (S.D.N.Y. Aug. 17, 2010) (excluding evidence about damages, even though the party offering the evidence "may be denied any recovery as a result").

## IV. Conclusion

Because it applies the same faulty analysis that this Court rejected in the July 5 Order, and because it is not a "supplement" to an expert report under Rule 26(e) of the Federal Rules of Evidence, the motion to is granted and the Revised Report of Finnerty is stricken.

It is so ordered.

**New York, NY**
**June 30, 2017**

_/s/ Sweet_
ROBERT W. SWEET
U.S.D.J.